Slip Op. 22–41

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| GHIGI 1870 S.P.A. and PASTA ZARA S.P.A., | |
| Plaintiffs, | |
| and | |
| AGRITALIA S.R.L. and TESA S.R.L., | Before: Richard K. Eaton, Judge |
| Consolidated Plaintiffs, | |
| v. | Consol. Court No. 20-00023 |
| UNITED STATES, | **PUBLIC VERSION** |
| Defendant, | |
| and | |
| RIVIANA FOODS, INC. and TREEHOUSE FOODS, INC., | |
| Defendant-Intervenors. | |

**OPINION**

[Remand Results are sustained.]

Dated: May 4, 2022

*David L. Simon*, Law Offices of David L. Simon, PLLC, of Washington, D.C., and *John J. Kenkel*, *Alexandra H. Salzman*, and *Judith L. Holdsworth*, deKieffer & Horgan, PLLC, of Washington, D.C. for Plaintiffs Ghigi 1870 S.p.A. and Pasta Zara S.p.A., and Consolidated Plaintiffs Agritalia S.r.L. and Tesa S.r.L.

*Sosun Bae*, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., argued for Defendant United States. With her on the brief were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Patricia M. McCarthy*, Director, and *Reginald T. Blades, Jr.*, Assistant Director. Of counsel on the brief was *Emma T. Hunter*, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C.

Eaton, Judge: Before the court are the U.S. Department of Commerce's ("Commerce" or the "Department") results of redetermination pursuant to the court's remand in *Ghigi 1870 S.p.A. v. United States*, 45 CIT __, 547 F. Supp. 3d 1332 (2021) ("*Ghigi I*"). *See* Final Results of Redetermination Pursuant to Court Remand (Feb. 25, 2022), PRR 4, CRR 11[1] ("Remand Results").

Plaintiffs Ghigi 1870 S.p.A. ("Ghigi") and Pasta Zara S.p.A. (which together comprised the collapsed entity, "Ghigi/Zara"), and Consolidated Plaintiffs Agritalia S.r.L. and Tesa S.r.L. (collectively, "Plaintiffs") have informed the court that they do not intend to file comments on the Remand Results.[2] *See* Letter from deKieffer & Horgan, PLLC, to the Ct. (Apr. 8, 2022), ECF No. 66.

The United States ("Defendant") asks the court to find that Commerce has complied with the court's instructions in *Ghigi I*, and to sustain the uncontested Remand Results. *See* Def.'s Resp. Pls.' Submission Regarding Remand Results (Apr. 12, 2022), ECF No. 67.

For the following reasons, the Remand Results are sustained.

## DISCUSSION

Plaintiffs commenced this consolidated case to contest certain aspects of the final results of the twenty-second administrative review of the antidumping duty order on pasta from Italy. In *Ghigi I*, familiarity with which is presumed, the court considered Plaintiffs' challenge to the Department's use of facts available and application of adverse inferences to certain U.S. payment dates that Ghigi provided, which Commerce found were unverifiable. The court upheld the use of

---

[1] "PRR" and "CRR" mean, respectively, the public remand record and the confidential remand record.

[2] Defendant-Intervenors Riviana Foods, Inc. and Treehouse Foods, Inc. withdrew from this action, effective October 7, 2021. *See* Order (Oct. 7, 2021), ECF No. 58.

facts available, but not the application of adverse inferences, explaining that "[w]here Commerce determines that the use of facts available is warranted, it may apply adverse inferences to those facts when replacing a party's information only if it makes the requisite additional finding that a party has 'failed to cooperate by not acting to the best of its ability to comply with a request for information from the [Department].'" *Ghigi I*, 45 CIT at __, 547 F. Supp. 3d at 1344 (first quoting 19 U.S.C. § 1677e(b)(1)); and then citing *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1381 (Fed. Cir. 2003)). Thus, the court stated:

> Although the use of facts available was clearly warranted here, the application of adverse inferences "in selecting from among the facts otherwise available" was not. *See* 19 U.S.C. § 1677e(b)(1)(A). The problem with the Final Results is that Commerce based its finding that the application of an adverse inference was warranted on the same facts that it found justified its use of facts available: "Pursuant to [19 U.S.C. § 1677e(a)(2)(D)], we find that a determination based on the facts otherwise available is warranted because the information on payment data was not verifiable. *Accordingly, we find that the application of partial adverse inferences under [19 U.S.C. § 1677e(b)(1)(A)] is warranted*, as it applies to Ghigi's U.S. payment date field." Final IDM at 13 (emphasis added). This finding, however, only recites that information was missing because it was unverifiable. It says nothing about Ghigi's behavior.
>
> As courts have explained in numerous decisions, the determination to use facts available is a separate determination from the application of adverse inferences. Each determination must be made separately, and each must be explained separately. *See, e.g.*, *Nippon Steel*, 337 F.3d at 1381. Commerce's single, conclusory assertion is inadequate to satisfy the statute because it does not explain the reasons for the application of an adverse inference and indeed seems to be based on Commerce's inability to verify the information on payment data. *See* Final IDM at 13. In the Final Results, the Department failed to satisfy the statutory requirement that it make a determination as to whether a party failed to cooperate to the best of its ability.

*Id.* at __, 547 F. Supp. 3d at 1345 (alterations in original). Therefore, the court remanded the final results on the sole issue of adverse inferences:

> Accordingly, the Final Results are remanded for Commerce to determine whether Ghigi failed to cooperate to the best of its ability and, if the Department continues to find that it did, explain its adverse inference determination with reference to record evidence. If Commerce is unable to explain its determination on remand, it

> may not use an adverse inference when selecting from among the facts otherwise available.

*Id.* at __, 547 F. Supp. 3d at 1345.

In the Remand Results, Commerce continued to find adverse inferences were warranted. *See* Remand Results at 1 ("[A]fter reviewing the record pursuant to the *Remand Order*, Commerce has found that it is still appropriate to apply an adverse inference for Ghigi's U.S. payment dates."). The court finds that the Department's adverse inferences finding in the Remand Results is supported by substantial evidence and otherwise in accordance with law.

To find a respondent has failed to cooperate to the best of its ability, the Department must perform two tasks:

> First, it must make an objective showing that a reasonable and responsible [respondent] would have known that the requested information was required to be kept and maintained under the applicable statutes, rules, and regulations. . . . Second, Commerce must then make a subjective showing that the respondent under investigation not only has failed to promptly produce the requested information, but further that the failure to fully respond is the result of the respondent's lack of cooperation in either: (a) failing to keep and maintain all required records, or (b) failing to put forth its maximum efforts to investigate and obtain the requested information from its records.

*Nippon Steel*, 337 F.3d at 1382-83 (citation omitted). "It is worth noting that the subjective component of the 'best of its ability' standard judges what constitutes the maximum effort that a particular respondent is capable of doing, not some hypothetical, well-resourced respondent." *Nat'l Nail Corp. v. United States*, 43 CIT __, __, 390 F. Supp. 3d 1356, 1373 (2019). Thus, "[a]n adverse inference may not be drawn merely from a failure to respond, but only under circumstances in which it is reasonable for Commerce to expect that more forthcoming responses should have been made; i.e., under circumstances in which it is reasonable to conclude that less than full cooperation has been shown." *Nippon Steel*, 337 F.3d at 1383.

Commerce has shown that here the objective and subjective prongs of the test in *Nippon Steel* are satisfied. First, by way of explanation, Commerce stated that as an "experienced respondent" Ghigi/Zara objectively should have known what information was expected to be maintained:

> Ghigi/Zara is an experienced respondent that had participated in two consecutive reviews prior to the 2017/2018 administrative review as a mandatory respondent. Given this past experience in the two consecutive reviews prior to the instant review, Ghigi/Zara was particularly familiar with what requested information was required to be kept regarding payment dates and maintained under the applicable statutes, rules, and regulations, and how that information needed to be reported to Commerce. Despite this knowledge, however, Ghigi/Zara failed to report to Commerce the requested information.

Remand Results at 4 (footnote omitted). Plaintiffs do not contest this finding.

As for the subjective prong of the test, Commerce stated that

> the failure of Ghigi/Zara to respond fully is the result of the respondent's lack of cooperation in failing to put forth its maximum efforts to investigate and obtain the requested information from its records. At verification, Commerce found that the payment dates were incorrect for all five U.S. sale traces performed (three of which Ghigi/Zara were informed would be examined prior to verification and two of which were identified at verification).

Remand Results at 4-5.[3] Commerce found that the errors in Ghigi/Zara's reporting of Ghigi's U.S. payment dates were the result of inattention and carelessness—they were not merely clerical errors:

---

[3] For instance, Commerce recited record evidence showing that

for the sales traces that Commerce examined—three of which Ghigi had been informed would be examined in the pre-verification agenda—the actual payment date differed from the payment date reported in [Ghigi's second U.S. sales database, *i.e.*, US02] by 24, 194, 290, -301, and 43 days, respectively. Because of these misreported payment dates, the credit payment periods—the difference between shipment and payment date that is used in the calculation of the adjustment for imputed credit expenses (CREDITU)—for these five sales were, in days, 35 (correct value: 11), 257 (correct value: 63), 299 (correct value: 9), -260 (correct value: 41), and 80 (correct value: 37), respectively. Thus, Ghigi's misreporting

> Ghigi/Zara claimed that the errors were the result of a "transcription error." However, the errors in this field do not reflect a "transcription error" that resulted from systematic inaccuracies, such as an error that caused every payment date in the payment date field to be five days later than the actual payment date or in <u>any</u> otherwise systemic or explicable pattern. Rather, the errors in the payment date field as discovered by the verifiers were significant and followed no discernable pattern. Ghigi/Zara's reporting of Ghigi's U.S. payment dates was simply wrong and unreliable.
>
> Ghigi/Zara's submission of unreliable and inaccurate payment dates for Ghigi's U.S. sale observations that were examined, even though such information is clearly available in Ghigi's internal books and records, constitutes a clear example of the "inattentiveness, carelessness or inadequate record keeping" that *Nippon Steel* found is not condoned by the Act.

Remand Results at 7 (footnotes omitted). Again, Plaintiffs do not contest this finding.

For Commerce, the unreliable reporting of Ghigi's payment dates precluded Commerce from calculating an accurate weighted-average dumping margin for the mandatory respondent Ghigi/Zara. *See* Remand Results at 7 ("As the CREDITU adjustment is calculated based on the difference between the shipment date (SHIPDATU) and the payment date, these unreliable and inaccurate payment dates lead to incorrect values of CREDITU, an adjustment used in the calculation of the net U.S. price, and thus, to an inaccurate calculation of Ghigi/Zara's dumping margins during the [period of review]."). Therefore, for the Department, "Ghigi/Zara . . . failed to cooperate to the best of its ability and hindered Commerce from timely completing its administrative review." Remand Results at 7.

Ultimately, the Department applied "the longest period between payment date and shipment date that is on the record for Ghigi's U.S. sales," as adverse facts available for "the credit

---

> of payment dates is not a harmless error, but has a significant impact on the calculated CREDITU adjustment, as the time period for that adjustment is off by many multiples of the correct number of days.

Remand Results at 5-6 (footnotes omitted).

payment period for all of Ghigi's U.S. sales, except for U.S. sale observations" with respect to which Commerce verified the actual payment date recorded in Ghigi's accounting system and for the five sale traces examined at verification. *See* Remand Results at 8.

Because the Department has complied with the court's order in *Ghigi I*, and has explained and supported with substantial evidence its finding that the objective and subjective prongs of the adverse inferences test articulated in *Nippon Steel* are satisfied, the court sustains Commerce's application of adverse inferences as supported by substantial evidence and otherwise in accordance with law.

## CONCLUSION

Based on the foregoing, the court sustains the Remand Results. Judgment shall be entered accordingly.

/s/ Richard K. Eaton
Judge

Dated: May 4, 2022
New York, New York